UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:15-CV-80237 – DIMITROULEAS

**ARRIVALSTAR, S.A.** and **MELVINO TECHNOLOGIES LIMITED**,

        Plaintiff,

vs.

**SOLMAR-UNIVERSAL TANKER CHARTERING, INC.**,

        Defendant.

_____/

**DEFENDANT SOLMAR-UNIVERSAL TANKER CHARTERING, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT (DE 1) FOR LACK OF JURISDICTION AND IMPROPER VENUE, OR IN THE ALTERNATIVE TO TRANSFER VENUE TO NEW JERSEY**

**PRELIMINARY STATEMENT**

Defendant Solmar-Universal Tanker Chartering, Inc. ("Solmar") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint of Plaintiffs ArrivalStar, S.A. and Melvino Technologies Limited (collectively, "Plaintiffs") for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), for improper venue pursuant to 28 U.S.C. §1400(b) or, in the alternative, transfer venue of this action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §1404(a).

The facts of this case make clear that it has no business being in Florida, and no good faith basis in any event to be anywhere. It is but another one of the hundreds filed in this District by the same "patent-troll" non-resident plaintiffs who are out only to inconvenience, harass and annoy unsuspecting defendants, such as Solmar, into paying money to Plaintiffs and their

Florida-based attorneys, consistent with the pre-litigation campaign of letters and phone calls through which Plaintiffs and their representatives endeavored to extract a nuisance payment from Solmar in order to allow it to avoid litigation.  Plaintiffs, it will be shown, have no legal rights whatsoever that deserve this or any Court's protection, and Solmar, like the hundreds of Defendants similarly stained with Plaintiffs' black ink and baseless allegations, has engaged in no conduct, in Florida or elsewhere, that justifies the existence of this predatory and bullying lawsuit.

As set forth in detail below, Solmar conducts its business exclusively at its principal and only place of business located in New Jersey, not Florida; Solmar maintains no presence whatsoever in Florida; Solmar engages in only the most intermittent and isolated telephonic contacts with but two occasional customers who maintain offices in Florida, and performs no services in Florida; and Solmar makes no use of Plaintiffs' alleged intellectual property anywhere, and especially not in Florida where it conducts no operations.  Against this framework, the Complaint's mere allegation that "a substantial part of the events or omissions giving rise to the claim occurred" in Florida, or that Solmar "committed acts of infringement" in Florida is demonstrably false, as is the Complaint's conclusory statement that Solmar has somehow "purposely availed itself of Florida's laws," as alleged in the Complaint.

For the reasons that follow, this Court, upon a fair reading of the record, should have no difficulty granting Solmar's motion in its entirety and dismissing this case for lack of jurisdiction and improper venue or, in the alternative, transferring venue of this action to the United States District Court for the District of New Jersey.

## STATEMENT OF FACTS[1]

Solmar is a New Jersey corporation with its principal place of business at 374 Millburn Avenue, Millburn, New Jersey. Joel Decl. at ¶3, attached hereto as **Exhibit A**. Solmar is entirely owned and entirely operated by two New Jersey residents, Ralph Joel ("Joel") and Wolfgang Wittling ("Wittling"). Id. Neither Joel nor Wittling owns any property in the State of Florida. Id.

Solmar exclusively maintains its single, and principal, place of business in Millburn, New Jersey. Id. at ¶4. Solmar does not maintain an office in Florida. Id. Solmar was established in April 2001 and, since inception of its operations, has been engaged in the business of ship brokering and chartering of liquid bulk cargoes. Id. at ¶5. Put simply, Solmar arranges for the shipment of liquid products from and between major U.S. and foreign oil and chemical companies at ports of call throughout the Western Hemisphere. Id. Solmar does not deliver or distribute any products whatsoever, and certainly does not do so in Florida; it merely provides brokering services -- exclusively from its office in New Jersey -- through which customers' liquid product cargoes are transported from one venue to another. Id. at ¶6.

Solmar does not import any products into Florida, or export any products out of Florida, nor does Solmar use or employ any Florida-based services to aid in its brokerage operations. Id. at ¶7. Most importantly, Solmar does not provide any services in Florida. Id. Solmar has not manufactured, marketed, or sold products that infringe on any of Plaintiffs' alleged patents, nor has Solmar negotiated with any parties to do so. Id. at ¶8.

Solmar presently has approximately twenty customers for whom it provides brokering services on an as-requested basis. Id. at ¶9. Three of Solmar's present customers maintain

---

[1] The facts supporting this application are attested to in the Declaration of Ralph Joel ("Joel Decl."), an officer, director and shareholder of Solmar.

places of business in the State of Florida, and Solmar communicates with these customers by telephone from New Jersey.  Id. at ¶10.  None of these customers imports or exports cargoes to or from Florida.  Id.  The first, based in Miami, arranges through Solmar to transport cargoes between Houston and Venezuela, or between Europe and Venezuela; the second, which maintains an office in Ft. Lauderdale, ships cargoes of oil between various ports located internationally, but not in Florida.  Id.  A third Solmar customer, based in Dallas, Texas, retained Solmar to broker (from its New Jersey office) the transport of cargoes between Tampa and New Orleans on two occasions in 2015.  Id. Solmar provided these services exclusively in New Jersey.  Id.

Solmar has had no contact or communications with either Plaintiff and has not engaged in business or other activities with either Plaintiff, in Florida or anywhere else.  Id. at ¶11.  Solmar has not used the intellectual property described in Plaintiffs' Complaint at any time, and has certainly not done so in Florida.  Id.  Solmar operates exclusively in New Jersey, and whatever it does, it does in New Jersey.  Id.

According to the Complaint, Plaintiff ArrivalStar, S.A. ("ArrivalStar") is a corporation organized under the laws of Luxembourg with its principal place of business in Luxembourg.  Compl. at ¶5.  Plaintiff Melvino Technologies Limited ("Melvino") is a corporation organized under the laws of the British Virgin Island of Tortola with its principal place of business in that county.  Compl. at ¶6. Neither Plaintiff alleges any cognizable connection to Florida.

Indeed, the *only* nexus between Florida and the acts and omissions alleged in the Complaint -- none of which are true, as will be established if, when and as this litigation continues -- is the location of *Plaintiffs' counsel*, who is responsible for the filing of *137 separate infringement suits* claiming violations of vehicle-tracking patents in 2013 -- the most in

4

the USA for that year, according to a recently published (and unflattering) news article. See, e.g., http://www.law360.com/articles/536890/arrivalstar-tops-list-of-most-litigious-patent-trolls.

Plaintiffs -- non-resident serial litigators in this District -- brought the instant lawsuit against Solmar alleging, without any factual support, infringement of Patent Numbers 6,952,645, 7,400,970, 6,904,359 (the "Alleged Patents"). Tellingly, Plaintiffs have not pleaded any facts to support their cobbled up allegations that Solmar infringed on their Alleged Patents, in the State of Florida or elsewhere. Plaintiffs' Complaint nevertheless makes the following bare and conclusory allegations concerning personal jurisdiction and venue:

- This Court has personal jurisdiction over the Defendant pursuant to, *inter alia*, Florida's long-arm statute, §48.193, in that the Defendant: (a) operates, conducts, engages in, and/or carries on a business of business adventure(s) in Florida and/or has an office or agency in Florida; (b) has committed one or more tortious acts within Florida; (c) was and/or is engaged in substantial and not isolated activity within Florida; and/or (d) has purposefully availed itself of Florida's laws, services, and/or other benefits and therefore should reasonably anticipate being hailed into one or more of the courts within the State of Florida.

- Solmar transacts business and has, at a minimum, offered to provide and/or has provided to customers within this Judicial District and throughout the State of Florida services that infringe claims of the '645, '970 and '359 patents."

Compl. at ¶¶3, 11.

Plaintiffs, through their Florida-based attorneys, have brought nearly identical complaints against *hundreds* of other out-of-state Defendants in the Southern District of Florida. In fact, one such nearly identical Complaint was summarily dismissed on pre-answer motion based on the same facts and legal analysis as set forth herein, as discussed more fully below.

**LEGAL ARGUMENT**

I.     **THIS COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF PERSONAL JURISDICTION.**

A federal district court must dismiss a case against a non-resident defendant over which it has no personal jurisdiction. Peruyero v. Airbus S.A.S., No. 13-22832-Civ., 2014 WL 7734264, at *2 (S.D. Fla. April 30, 2014). To withstand a motion to dismiss, a plaintiff has the burden of establishing a prima facie case of personal jurisdiction over the non-resident defendant. Id.; see also Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). The defendant, in response, may submit affidavits and other evidence to refute the plaintiff's claim of jurisdiction. Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006). At that point, the burden shifts back to the plaintiff to product evidence that supports the exercise of personal jurisdiction. Id.; see also Jet Charter Serv., Inc. v. Koeck, 907 F.2d 1110, 1112 (11th Cir. 1990) ("When a defendant raises through affidavits, documents, or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony, or documents.").

In cases alleging patent infringement, the reviewing Court must apply Federal Circuit law to determine whether it can exercise personal jurisdiction over a non-resident defendant. Elite Aluminum Corp. v. Trout, 451 F. Supp. 2d 1311, 1314 (S.D. Fla. 2006); see also Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998) ("This court applies the law of the Federal Circuit, rather than that of the regional circuits, to determine personal jurisdiction in a patent infringement case"). As described above, Solmar maintains absolutely no presence in Florida. See Joel Decl. at ¶¶ 4, 7. To the contrary, it exclusively maintains its principal place of business in New Jersey. Id. at ¶4. As such, Solmar is only subject to the jurisdiction of this Court if: (a) the actions described in the Complaint fall within

6

the scope of Florida's long-arm statute, and (b) Solmar has sufficient minimum contacts with Florida to satisfy the requirements of due process. See Hildebrand v. Steck Mfg. Co., Inc., 279 F.3d 1351, 1354 (Fed. Cir. 2002) (a district court can properly exercise personal jurisdiction over a non-resident defendant if the party is amenable to service of process under the state long-arm statute and the culmination of the party's activities within the forum state satisfy the requirements of due process); accord Posner v. Essex Ins. Co., 178 F.3d 1209, 1214-15 (11th Cir. 1999) (a federal court can exercise jurisdiction over a non-resident defendant as long as the requirements of the state long-arm statute the Due Process Clause of the Fourteenth Amendment are met). Before this Court can exercise jurisdiction, both prongs must be satisfied. Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

**A.      Solmar's Conduct Does Not Fall Within the Parameters of the Florida Long-Arm Statute**

The Court must apply Florida law with respect to the interpretation of the state's long-arm statute. Elite Aluminum, 451 F. Supp. 2d at 1314 (citing Graphic Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1385 (Fed. Cir. 1998)). The Florida long-arm statute should be strictly construed and "any doubts about the applicability of the statue must be resolved in favor of the defendant and against a conclusion that jurisdiction exists." Peruyero, 2014 WL 7734264, at *4. Here, Plaintiffs summarily, and without any factual support, conveniently concluded that this Court has jurisdiction over Solmar because Solmar: "(a) operates, conducts, engages in, and/or carries on a business of business adventure(s) in Florida and/or has an office or agency in Florida; (b) has committed one or more tortious acts within Florida; (c) was and/or is engaged in substantial and not isolated activity within Florida; and/or (d) has purposefully availed itself of Florida's laws, services, and/or other benefits and therefore should reasonably anticipate being hailed into one or more of the courts within the State of Florida." Compl. at ¶3.

In response to Plaintiffs' bare and unsupported allegations, Solmar has provided a sworn declaration from one of its owners and officers, which conclusively establishes that: (a) Solmar does not conduct any business in Florida, nor does it have an office in Florida, Joel. Decl. at ¶4, 7; (b) Solmar has not used Plaintiffs' purported intellectual property anywhere, let alone within the State of Florida, id. at ¶8, 11; (c) the only intermittent and isolated contact that Solmar has with Florida is the occasional telephone calls with two of its clients who maintain offices in Florida, id. at ¶10; and (d) Solmar has not in any manner purposefully directed its activities to the State of Florida, id. at ¶14.

### 1. Solmar Does Not Operate Its Business Or Have An Office In Florida.

Plaintiffs vaguely reference F.S.A. §48.193(1)(a)(1), which provides that Florida courts will have jurisdiction over an entity that operates, conducts, engages in, or carries on a business or business venture in Florida or has an office or agency in Florida. This statute has no application to the facts here.

Preliminarily, it is indisputable that Solmar does not have an office or place of business within the State of Florida. Joel Decl. at ¶4. That being the case, to establish a court's personal jurisdiction under F.S.A. §48.193(1)(a), a non-resident defendant must have a "*general course of business activity in the State* for pecuniary benefit." Fraser v. Smith, 594 F.3d 842, 848 (11th Cir. 2010) (emphasis added). Inarguably, Solmar does not carry out a general course of business activity in the State of Florida for a pecuniary benefit. Indeed, Solmar does not import or export products into or out of Florida, nor does it utilize any Florida-based services to aid in its brokering operations. Joel Decl. at ¶7. To the contrary, the only tie that Solmar has to Florida is intermittent telephonic communications with but two out of its twenty customers. Id. at ¶ 10.

Solmar's mere telephonic communications with two customers situated in Florida are insufficient as a matter of law to justify the exercise of jurisdiction over Solmar in Florida. It is well-settled under Florida law that mere communications with residents of the State are not enough to constitute a "general course of business activity in the State for pecuniary benefit" for the purposes of personal jurisdiction. See Musiker v. Projectavision, Inc., 960 F. Supp. 292 (S.D. Fla. 1997) (concluding that one meeting in Florida and communications by telephone and mail did not constitute "substantial and not isolated" activity within Florida for the purposes of personal jurisdiction); Cauff Lippman & Co. v. Apogee Finance Grp., Inc., 745 F. Supp. 678, 682 (S.D. Fla. 1990) (finding that one meeting in Florida and communications by letter, telex, and telephone from out of state were insufficient to obtain personal jurisdiction over non-resident defendants); Intercontinental Corp. v. Orlando Reg'l Med. Ctr., 586 So.2d 1191, 1195 (Fla. 5th DCA 1991) (holding that one meeting in Florida and communications by letter and telephone were not sufficient for the purposes of personal jurisdiction).

Accordingly, Solmar's infrequent and intermittent communications with its customers in Florida do not make it subject to personal jurisdiction within the State.

    **2.**    **Solmar Did Not Engage In Any Tortious Conduct In Florida.**

Plaintiffs likewise allude to F.S.A. §48.193(1)(a)(2), which provides that Florida courts will have jurisdiction over an entity that commits a tortious act within the State. Although courts have held that patent infringement constitutes a tortious act for the purposes of establishing personal jurisdiction, Elite Aluminum, 451 F. Supp. 2d at 1314, Plaintiffs still must show that Solmar committed a substantial aspect of the alleged patent infringement in Florida. Musiker, 960 F. Supp. at 296. "Patent infringement occurs wherever an allegedly infringing product is

sold, offered for sale, and/or used." Zamora Radio, LLC v. Last.fm LTD, No. 09-20940-CIV, 2011 WL 2580401, at *2 (S.D. Fla. June 28, 2011).

In Structural Panels, Inc. v. Texas Aluminum Industries, Inc., a patent infringement case, the court found that personal jurisdiction was not appropriate because there was insufficient evidence to show that the out-of-state defendant "manufactured, marketed, or sold the alleged infringing product in Florida or negotiated with any parties to do the same," or that the out-of-state defendant had "solicited business or advertised in Florida regarding the alleged infringing" product. 814 F. Supp. 1058, 1065 (M.D. Fla. 1993). Similarly here, there is absolutely no evidence to suggest that Solmar manufactured, marketed, or sold products that infringe on any of Plaintiffs' Alleged Patents, nor has Solmar negotiated with any parties to do so. Joel Decl. at ¶8. Moreover, Solmar has never solicited business or advertised in Florida to promote the sale of products infringing upon Plaintiffs' Alleged Patents. Id. at ¶11.

Furthermore, in order to exercise jurisdiction under F.S.A. §48.193(1)(a)(2), the claimed tort must have caused injury in Florida. Musiker, 960 F. Supp. at 296. Generally, the site of injury in a patent infringement case is the location "at which the infringing activity directly impacts on the interests of the patentee," such as the place of infringing sales or the state in which the patent owner resides. Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1571 (Fed. Cir. 1994); see also Elite Aluminum, 451 F. Supp. 2d at 1314 (finding that shipping an allegedly infringing product into Florida, harming a Florida plaintiff, constituted the commission of a tortious act within the State); Jackson v. Grupo Industrial Hotelero, S.A., No. 07-22046-CIV, 2008 WL 4648999, at *6 (S.D. Fla. Oct. 20, 2008) (concluding that injury from a trademark infringement occurs in the state where the trademark owner resides). Here, there is no question that Solmar did not sell products infringing upon the Alleged Patents in Florida. Joel

10

Decl. at ¶8. It is equally indisputable that the purported patent owners -- Plaintiffs -- do not reside or maintain any presence in Florida. To the contrary, in the Complaint, ArrivalStar identifies itself as "a corporation organized under the laws of Luxembourg," while Melvino identifies itself as "a corporation organized under the laws of the British Virgin Islands of Tortola." Compl. at ¶¶5, 6. As such, it is baseless to claim that the alleged patent infringement has *any* connection to Florida, when neither Plaintiff even resides or operates in this country -- let alone within the State of Florida. This case, like its hundreds of companions, is entirely lawyer-driven.

**B.     Exercising Jurisdiction Over Solmar in Florida Would Violate Due Process.**

The Federal Circuit has set forth a three-part test used to determine whether the exercise of personal jurisdiction is proper in a patent infringement case. Elite Aluminum, 451 F. Supp. 2d at 1315. Under this test, the court must consider the following: "(1) whether the defendant 'purposefully directed' its activities at the residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" Id. (citing Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201-1202 (Fed. Cir. 2003)). These prongs essentially mirror the requirements of due process; the first two are used to determine whether the defendant has minimum contacts with Florida "such that it should reasonably anticipate being hailed into court there," while the third analyzes whether the exercise of personal jurisdiction would comport with the traditional notions of fair play and substantial justice. Id.

**1.     Solmar Does Not Have Minimum Contacts With Florida.**

"The minimum contacts test examines the number and nature of a defendant's contacts with the forum." Red Wing, 148 F.3d at 1359. Generally, the court can exercise specific

jurisdiction over an out-of-state defendant when the cause of action "arises out of or relates to" the defendant's contacts with the forum state, even if those contacts are "isolated and sporadic." See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-473 (1985). Alternatively, the court can exercise general jurisdiction over a non-resident defendant if it has "continuous and systematic" contacts with the forum state, regardless of whether those contacts relate to the cause of action. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-416 (1984). In both situations, the defendant's contacts must be purposeful and cannot be "random, fortuitous, or attenuated." Burger King, 471 U.S. at 475.

### 2. Florida Does Not Have Specific Jurisdiction Over Solmar.

In determining whether Solmar's actions constituted "purposeful availment," the Court should consider "the quality, nature, and extent of the activity in the forum, and the foreseeability of consequences within the forum from activities outside it." Elite Aluminum, 451 F. Supp. 2d at 1315. Typically, with respect to patent infringement cases, the court can exercise personal jurisdiction over a non-resident defendant if that defendant has sold an allegedly infringing product in the forum state. Id. at 1316. That is simply not the case here.

Solmar's intermittent administrative communications with its Florida customers have absolutely no relation to the allegations in the Complaint. To the contrary, Plaintiffs merely allege, without any authority, that "Solmar transacts business and has, at a minimum, offered to provide and/or has provided to customers within this Judicial District and throughout the State of Florida services that infringe" on their patents. Compl. at ¶11. This Court has considered, and summarily rejected, Plaintiffs' same empty arguments in a recently decided case.

Plaintiffs used this *exact* same language in at least one of its other patent infringement claims brought in this District against a different non-resident defendant. In ArrivalStar, S.A. v.

Axis Global Logistics, No. 11-80585-CIV, 2012 WL 488192 (S.D. Fla. Feb. 14, 2012), this Court found Plaintiffs' efforts to be unavailing, unsupported and insufficient to justify the exercise of personal jurisdiction over the Georgia defendant, and dismissed the Complaint. There is no reason to deviate from that conclusion in this case, which involves the same Plaintiffs making the same claims against a similarly situated non-resident Defendant with no nexus to Florida at all. The blunt and straightforward analysis in which this Court engaged in that case applies foursquare to the facts and legal issues presented here.

### 3. Florida Does Not Have General Jurisdiction Over Solmar.

"In the context of patent infringement litigation, an assertion of general jurisdiction requires that the defendant have 'continuous and systematic' contacts with the forum state and that such activity will confer general personal jurisdiction even when the cause of action has no relationship with those contacts." Zamora Radio, 2011 WL 2580401, at *11 (quoting Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1331-1332 (Fed. Cir. 2008)). The contacts must be "so substantial and of such a nature to justify suit against the defendant on causes of action arising from dealings entirely different from those activities." Id. Such substantial contacts are not present here.

In Roblor Marketing Group, Inc. v. GPS Industries, Inc., 645 F. Supp. 2d 1130, 1144 (S.D. Fla. 2009), this Court held that the defendant did not have "continuous and systematic contacts" with the State of Florida because (1) it was not licensed to do business in Florida nor did it carry out its business in Florida; (2) it did not maintain an address, office, or employees in Florida; (3) it did not maintain a physical presence of any kind in Florida; and (4) it did not direct its advertising towards Florida residents. See also Zamora Radio, 2011 WL 2580401, at *11 (relying on the same analysis). Similarly here, Solmar is not licensed to do business in Florida

and does not carry out business of any kind in Florida. Joel Decl. at ¶6, 7. Solmar also does not maintain an address, office, or employees in Florida. Id. at ¶ 4. And, other than a passive website accessible to residents of every state, Solmar did not specifically advertise its services to Florida residents. Id. at ¶14. See also Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) ("A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction."). As explained above, Solmar's only connection with Florida are its two customers who reside there and its one customer who twice retained Solmar to transport cargo between Tampa and New Orleans. Joel Decl. at ¶10.

Based on the foregoing, it is clear that Solmar contacts with Florida are not "continuous and systematic" and are instead isolated, intermittent, and attenuated.

### 4. Exercising Jurisdiction Over Solmar In Florida Would Violate The "Traditional Notions Of Fair Play And Substantial Justice."

The exercise of jurisdiction over an out-of-state defendant, even if consistent with the state long-arm statute and minimum contacts analysis, must also comport with the traditional notions of fair play and substantial justice. See Burger King, 471 U.S. at 476. To analyze whether the exercise of personal jurisdiction would comport with these requirements, the Court should consider: (1) the burden on the defendant, (2) the interests of the forum, (3) the plaintiff's interest in obtaining relief, (4) the judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the state in furthering fundamental substantive social policies. Id. at 477. Here, even assuming that Solmar has minimum contacts with Florida and its activities fall within the parameters of the Florida long-arm statute -- and the facts clearly demonstrate otherwise -- the principles of fair play and substantial justice

nevertheless prohibit this Court from exercising personal jurisdiction over Solmar under these circumstances.

As discussed in detail above, Solmar -- which resides over 2,000 miles away from West Palm Beach -- has absolutely no connection to Florida. Joel Decl. at ¶¶4, 6, 7, 11. Indeed, Solmar is not licensed in Florida nor does it engage in any business in Florida. Id. at ¶¶3, 4, 6. Solmar does not even use any Florida-based services to aid in its shipping operations. Id. at ¶7. Moreover, Solmar is a small and closely-held business, with two owners and few other employees. As such, the burden of litigating in Florida would be substantial. See Roblor Mktg., 645 F. Supp. 2d at 1143 (finding that the burden on the out-of-state defendant to litigate in Florida would be substantial because it was a small business with limited connections to the State). Accordingly, considering the foregoing, it is unjust and improper to require Solmar to participate in these Florida proceedings.

Furthermore, Florida's interest in this dispute is simply non-existent: (1) the allegations in the Complaint have no connection to Florida; (2) Plaintiffs are not Florida residents; and (3) Solmar is not a Florida company nor is it licensed to do business in Florida. In fact, it seems that the only connection that this lawsuit has to Florida is Plaintiffs' attorney. Thus, transfer of this suit to New Jersey, where Solmar operates, would not cause any undue hardship on Plaintiffs. Indeed, Plaintiffs -- residents of Luxembourg and the British Virgin Islands -- would be no more inconvenienced in New Jersey, the proper forum, than they would in Southern Florida. Even if it would be more convenient for Plaintiffs to litigate in Florida (as their attorney is located there), this convenience is "far outweighed" by Solmar's burden of litigating in Florida. Id. In brief, the traditional notions of fair play and substantial justice would not be served if this action were

allowed to proceed in the Southern District of Florida -- a forum that lacks *any* connection, meaningful or otherwise, to the parties and the dispute at issue.

## II. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PROPER VENUE.

The consistent and controlling legal authority establishes that venue in a patent infringement action properly lies in the judicial district where the *defendant* resides or where the defendant has committed acts of infringement and has a regular and established place of business. See 28 U.S.C. §1400(b). Generally, venue in such cases includes "any district where there would be personal jurisdiction over the corporate defendant at the time the action is commenced." Structural Panels, 814 F. Supp. at 1067 (citing VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1583 (Fed. Cir. 1990)). Because Solmar does not in any manner meet the statutory requirements set forth in 28 U.S.C. §1400(b), venue in the Southern District of Florida is entirely improper as a matter of law.

First, Solmar does not reside in Florida. It is incorporated in New Jersey and has its principal place of business exclusively in New Jersey. Joel Decl. at ¶¶3, 4. Second, and putting aside the fact that Solmar did not use or infringe upon Plaintiffs' Alleged Patents anywhere, Solmar certainly did not do so in Florida, where it conducts no operations nor maintains any presence -- as explained by Ralph Joel, one of Solmar's owners, officers and directors, whatever Solmar did, it did exclusively in New Jersey. Id. at ¶11. Solmar has never manufactured, sold, or offered for sale any of the allegedly infringing products in Florida. Id. at ¶8. Last, Solmar does not have a "regular and established place of business" in Florida that would support establishing venue in the State. Id. at ¶4.

Under these facts, Solmar is not and cannot lawfully be subject to personal jurisdiction in Florida. Accordingly, venue of this action in the Southern District of Florida is improper, and it should be summarily dismissed.

### III. IN THE ALTERNATIVE, THE CASE SHOULD BE TRANSFERRED TO THE DISTRICT OF NEW JERSEY.

Under 28 U.S.C. §1406, this Court may transfer venue even if it lacks personal jurisdiction over Solmar in Florida. A district court can transfer a case "for the convenience of the parties and witnesses, and in the interest of justice." 28 U.S.C. §1404(a). In deciding whether to transfer a case to another venue, the court should consider the following factors: "(1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses and the availability of witnesses through compulsory process; (4) the location of documents and other sources of proof; (5) the relative availability of the parties to bear the expense of changing forum; and (6) trial efficiency and expense to the justice system." For Life Products, Inc. v. Perfect Products, Inc., No. 11-60500-Civ, 2011 WL 2181889 (S.D. Fla. June 3, 2011). Here, Plaintiffs' choice of forum bears absolutely no relationship to this case. Consequently, this Court should not afford this selection as much deference as is usually required. Id. ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.").

Nevertheless, Plaintiffs' choice of forum is visibly outweighed by the remaining considerations. First, not one party to this lawsuit is a resident of Florida. To the contrary, Solmar is a resident of New Jersey and Arrival Star and Melvino are self-identified as corporations from the countries of Luxembourg and the British Virgin Island of Tortola, respectively. As such, it is undoubtedly more convenient for Solmar, a small business, to litigate in the District of New Jersey, where it resides. Similarly, it is no more inconvenient for

17

Plaintiffs, foreign corporations, to litigate in the District of New Jersey rather than the Southern District of Florida.  As far as the convenience of witnesses and the locations of documents, evidence supporting Solmar's alleged patent infringement -- if it exists -- would be located in New Jersey where Solmar maintains it principal place of business.  Indeed, all of Solmar's employees and all of Solmar's documents are located within that State.  See Joel Decl. at ¶4.  Finally, because the case lacks any meaningful connection to Florida, judicial efficiency favors hearing the case in a forum, like New Jersey, that at least bears some cognizable relationship to the dispute at issue.

## CONCLUSION

Based upon the foregoing, Defendant Solmar-Universal Tanker Chartering, Inc. ("Solmar") respectfully requests that this court grant its instant motion to dismiss the Complaint of Plaintiffs ArrivalStar, S.A. and Melvino Technologies Limited (collectively, "Plaintiffs") for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), for improper venue pursuant to 28 U.S.C. §1400(b) or, in the alternative, transfer venue of this action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §1404(a).  Solmar further requests such other and further relief as this Court deems equitable and just.

Respectfully submitted,

| | |
|---|---|
| **McCUSKER, ANSELMI, ROSEN & CARVELLI, P.C.** | **HERNANDEZ LEE MARTINEZ, LLC** |
| | *Counsel for Defendant* |
| 210 Park Avenue, Suite 301 | 255 Aragon Ave., Suite 300 |
| Florham Park, NJ 07932 | Coral Gables, Florida 33134 |
| (973) 635-6300 | Phone: (305) 842-2100 |
| Attorneys for Defendant | Facsimile: (305) 842-2105 |
| Paul F. Carvelli | |
| pcarvelli@marc-law.com | By:     s/   Jermaine A. Lee            |
| | **Jermaine A. Lee, Esq.** |
| *Counsel for Defendant* | Florida Bar. No.: 0850861 |
| | jlee@hlmlegal.com |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 1st day of July 2015, I electronically filed the foregoing with the Clerk of the Court via CM/ECF. I also certify that the foregoing document is being served this day on all counsel or pro-se parties identified on the below service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                          /s Jermaine A. Lee

Jason P. Dollard, Esq
jdollard@jpdesq.com
**LESLIE ROBERT EVANS & ASSOC., P.A.**
214 Brazilian Avenue, Suite 200
Palm Beach, Florida 33480
Phone: (561) 832-8288
Fax: (561) 832-5722
*Counsel for Plaintiffs*